UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard Hoeft,

                Plaintiff,                  Court File No. 17-cv-2526 (MJD/LIB)

    v.

                                 **REPORT AND RECOMMENDATION**

Nathan Eide et al.,

                Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Nathan Eide, Defendant William Nixon, Defendant Laura Auron, Defendant Russell Conrow, and Defendant Pat Hondl's Motion for Summary Judgment, [Docket No. 24]; and upon referral from the Honorable Michael J. Davis. (Order of Reference [Docket No. 30]). A hearing was held on August 29, 2018, after which the motion were taken under advisement. [Docket No. 38].

For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment, [Docket No. 24], be **GRANTED.**

## I.   BACKGROUND

The present case arises out of Plaintiff's interactions with Lake County, Minnesota personnel while Plaintiff was engaged in logging in Lake County, as well as, Plaintiff's eventual temporary prohibition from bidding on logging contracts in Lake County. (See, Amended Compl. [Docket No 18]).

Plaintiff initiated the present case on July 5, 2017, by filing his pro se Complaint. [Docket No. 1]. On February 12, 2018, Plaintiff filed his Amended Complaint. [Docket No. 18]. In his Amended Complaint, Plaintiff named as Defendants, Nathan Eide, the Lake County Minnesota

Forestry Commissioner; William Nixon, a Lake County Minnesota Forester; Pat Hondl, a Lake County Minnesota Forestry staff member; Laura Auron, the Lake County Minnesota District Attorney; Russell Conrow, a Lake County Minnesota Assistant District Attorney; and "[a]t least one John Does [sic] or Jane Doe defendant and [a]t least one insurance company or other, and at least one other under Minnesota's indemnification statute." (hereinafter "Defendants"). (Amended Compl., [Docket No. 18], at 1–2). Plaintiff specifically sues each Defendant "in their personal capacities." (Id. at 2).

Plaintiff asserts he is a resident of Wisconsin who runs a small logging business that began working in Lake County, Minnesota (hereinafter "Lake County"), before the fall of 2011. (Id. at 2). Defendant Nixon was the supervising forester at the time Plaintiff began logging, and Plaintiff asserts that he completed "at least 3 sales" while Defendant Nixon was the supervising forester "without any complaints." (Id. at 3).

According to Lake County timber sale permits, Plaintiff purchased the right to harvest timber at the Lake County timber sales between 2009 and 2014, pursuant to Minnesota Statute § 282.04 (2018), which permits Minnesota counties to hold timber sales. (Ex. A, [Docket No. 27], at 1, 62). Between 2009 and 2014, Lake County issued twelve logging permits to Plaintiff. (See, Ex. A [Docket No. 27]). The permits allowed Plaintiff, after making both an initial payment and full payment thereafter, to enter upon specific land and remove certain amounts of timber by a specific date. (Id.). The permits also included regulations which governed Plaintiff's timber harvesting activities. (Id.).

In both November of 2012, and January of 2013, Lake County returned Plaintiff's checks to him due to insufficient funds. (Ex. C, [Docket No. 27], at 1). The County, through its Deputy

Auditor, Ronelle Radle, informed Plaintiff that his checks were returned, and that Plaintiff would be required to make all future payments by money order or cashiers check. (Id.).

In his Amended Complaint, Plaintiff asserts that Defendant Eide was promoted to Forestry Commissioner at about the same time Plaintiff began working Timber Sale 12-06TA. (Amended Compl., [Docket No. 18], at 3). Plaintiff alleges that upon his promotion to Forestry Commissioner Defendant Eide immediately began discriminating against him. (Id. at 2).

On March 5, 2013, Defendant Eide emailed Plaintiff to inform him that the receipts for payments Plaintiff was to have made to Lake County to settle his balance for an over run on harvesting Timber Sale 09-08TA, and for a down payment on Timber Sale 12-13TA, were negated because of nonpayment. (Ex. C, [Docket No. 27], at 6). According to the email, because Timber Sale 09-08TA now had an outstanding over run balance in the amount of $366.50, Plaintiff was not allowed access to Timber Sale 12-06TA or any other Lake County sales until the balance was paid in full. (Id.). Additionally, because Plaintiff's payment of the deposit for Timber Sale 12-13TA was not made, "[S]ale 12-13TA has been forfeited and [was] no longer available to [Plaintiff]." (Id.).

In the summer of 2014, Plaintiff alleges that Defendant Eide told him during a telephone conversation that "if it were up to me, you would not have any of these [timber] sales, because the sales that you have could be cut by one of our loggers up here. Isn't there any wood in Wisconsin to cut[?]" (Amended Compl., [Docket No. 18], at 3).

On August 7, 2014, the Rainforest Alliance ("FSC") conducted an audit of the Lake County Land Department. (Ex. H, [Docket No. 27], at 1). The audit report, finalized on September 30, 2014, specifically addressed Timber Sale 12-06TA, reporting that "discarded fluid containers and other garbage were piled on the ground. Some containers, although capped, still contained fluid."

(Id.). The report further addressed Timer Sale 12-06TA stating, "[a]pproximately 16-ha area consisting of two separate clearcut blocks, harvested during the summer of 2013 and 2014. Contractor[1] had left empty fluid containers and other trash on one of the landings. Furthermore, a low wet seepage area had been used as part of a skid trail, although rutting was minor and isolated. According to LCLD staff the sale area was still open (i.e., active)." (Id. at 11).

In November 2014, a representative from the Minnesota Department of Agriculture (hereinafter "MDA representative"), contacted a representative from the Wisconsin Department of Agriculture (hereinafter "WDA representative"), regarding Plaintiff's logging practices. (Ex. G, [Docket No. 27], at 1–2). In the email exchange, the MDA representative asked the WDA representative if Wisconsin had an active Gypsy Moth Agreement with Plaintiff. (Id.). The WDA representative emailed back that Wisconsin did not have such an agreement with Plaintiff. (Id.). The MDA representative then emailed Defendant Eide that MDA was "having some challenges with a logger that is harvesting in Lake County" and that the MDA would provide updates going forward. (Id.).

On December 10, 2015, the MDA representative emailed Defendant Eide and asked him whether he had a list of active or closed out sales with Plaintiff. (Id. at 4). Defendant Eide responded that he would try to get a full list together. (Id.). On December 30, 2015, the MDA representative again contacted Defendant Eide and informed him that Plaintiff did not have a Gypsy Moth Compliance Agreement or a valid Gypsy Moth Limited Permit with the state of Minnesota. (Id. at 5). Defendant Eide then forwarded the email to Defendant Nixon, telling him that "[w]e need to help MDA by making sure that [Plaintiff] follows quarantine rules." (Id.).

---

[1] The "Contractor" referred to is the Plaintiff, Richard Hoeft.

Plaintiff alleges that sometime in 2015, while he was cutting Timber Sale 12-06TA, Forester Bodell told him that he was required to pay a $5,000.00 bond. (Amended Compl., [Docket No. 18], at 3). Plaintiff recalls that when he expressed his displeasure with having to pay a bond, Forester Bodell responded by saying, "I don't know, I've never heard of this before." (Id. at 3).

On February 10, 2016, Mr. Eide emailed a letter to Plaintiff to inform him about his "timber sales status and to convey [their] concerns of [his] performance as a logger cutting Lake County managed timber." (Ex. P, [Docket No. 27], at 1). The letter addressed three issues regarding Plaintiff's logging activities. (Id.). The first issue addressed by the letter was Plaintiff's "lack of harvest activity compared to the number of timber sales held." (Id.). The second issue addressed was the timing of sale entry. (Id.). Specifically, the letter stated, "You have not operated on any timber sale in Lake County yet this winter and frost levels are almost nonexistent. You needed to be opening up your sales in early January to have a chance of completing sales that will be expiring." (Id.). The third issue addressed in the letter was Plaintiff's "poor performance on timber sales." (Id.). The letter stated, "Your timber sale 1206-TA was visited by us and an FSC audit team in 2014 which resulted in a non-conformance outcomes due to trashy landing and not following the forester's guidance on skid trail placement. We expect our timbersales to be operated in a professional manner under the direction of the forester." (Id.). The letter was signed by Defendant Eide and Defendant Nixon, the Deputy Land Commissioner of Lake County. (Id.). Defendant Auron, the Lake County District Attorney, and Matthew Huddleston, a Lake County Administer, were copied on the email containing the letter. (Id.).

On May 12, 2016, Defendant Eide emailed the MDA representative and asked her to update him on the status of Plaintiff's Gypsy Moth permit and "what [Plaintiff] can haul and what [Plaintiff] can't do." (Id. at 7). The MDA representative responded that Plaintiff did not have a

valid Gypsy Moth Limited Permit nor a valid Gypsy Moth Compliance Agreement. (Id.). Defendant Eide forwarded the MDA representative's email to Defendant Nixon. (Id.).

On October 11, 2016, a representative from the United State Department of Agriculture (hereinafter "USDA representative") emailed Plaintiff, requesting that he complete the shipment request form for wood from the Gypsy Moth Quarantine. (Id. at 9). Plaintiff emailed back that he did not cut any wood in the Gypsy Moth Quarantine. (Id.). The USDA representative forwarded Plaintiff's email to the MDA representative. (Id.). The MDA representative then forwarded Plaintiff's email to Defendant Eide and asked whether Plaintiff had any Lake County timber sales and whether they were active. (Id. at 8). Defendant Eide responded to the MDA representative's email, stating that, "[b]ecause of threatened litigations from [Plaintiff], all inquiries about him need to go through our attorney's office." (Id.).

On February 12, 2018, Plaintiff filed his Amended Complaint. [Docket No. 18]. In his Amended Complaint, Plaintiff named as Defendants, Nathan Eide, the Lake County Minnesota Forestry Commissioner; William Nixon, a Lake County Minnesota Forester; Pat Hondl, a Lake County Minnesota Forestry staff member; Laura Auron, the Lake County Minnesota District Attorney; Russell Conrow, a Lake County Minnesota Assistant District Attorney; and "[a]t least one John Does [sic] or Jane Doe defendant and [a]t least one insurance company or other, and at least one other under Minnesota's indemnification statute." (hereinafter "Defendants"). (Amended Compl., [Docket No. 18], at 1–2). In his Amended Complaint, Plaintiff brings claims against Defendants for: (1) discrimination pursuant to the Privileges and Immunities Clause; (2) breach of contract; (3) retaliation; (4) defamation; and (5) conspiracy. (Id. at 1).

On June 15, 2018, Defendants filed their Motion for Summary Judgment. (See, Defs.' Mot. for Summary Judgment [Docket No. 24]).

On June 25, 2018, Judge Michael J. Davis referred the present Motion for Summary Judgment, [Docket No. 24], to the undersigned for Report and Recommendation. (Order [Docket No. 30]). On June 25, 2018, the undersigned issued a briefing schedule.

On July 16, 2018, Plaintiff filed his Opposition to Defendants' Motion for Summary Judgment. Plaintiff's Opposition included nine exhibits. (Plf.'s Opp. [Docket No. 33]).[2]

On July 30, 2018, Defendants filed a Reply to Plaintiff's Opposition. (Defs.'s Reply [Docket No. 37]).

On August 29, 2018, the Court held a Motions Hearing on Defendants' Motion for Summary Judgment at which both Plaintiff and counsel for the Defendants were present, and the Court took the matter under advisement at the conclusion of that Motions Hearing. (Minute Entry [Docket No. 38]).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[2] These exhibits were: (Ex. 1) an email exchange between Defendant Eide and Richard Moore; (Ex. 2) a letter from Plaintiff to Defendant Nixon, Defendant Auron, and Forester Bodell on August 31, 2016; (Ex. 3) a letter sent to Plaintiff from Defendant Eide and Defendant Nixon on February 10, 2016; (Ex. 4) a letter sent to Plaintiff from Defendant Conrow on September 22, 2010; (Ex. 5) a copy of Plaintiff's interrogatories; (Ex. 6) an email from Defendant Eide to Defendant Hondl; (Ex. 7) a letter from Ronell Radle to Plaintiff; (Ex. 8) an unsigned memorandum of agreement between Plaintiff and Defendant Eide dated August 11, 2015; and (Ex. 9) a document titled "Amendment to Lake County Timber Sale 08-19TA," signed in October 2011, and a document titled "Timber Sale Amendment," signed in October 2015.

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added).

While the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest on mere allegations or denials in their pleadings; rather, the non-moving party must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting admissible evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. App'x 596 (5th Cir. 2005) (unpublished decision); See also, Simms v. McDowell, No. 4:08cv–60–M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."). "A properly supported motion for summary judgment is not defeated by self-serving

affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473–74. A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995); Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). If the nonmoving party relies on conclusory allegations, and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

"If the moving party supports the motion with evidence, the opposing party must rebut it or the court can consider the fact undisputed." Irish v. U.S. Dept. of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. P. 56(e)(2)), adopted by, 2013 WL 452576, rev'd on other grounds, 564 Fed. App'x 259 (8th Cir. 2014).

The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; Davidson & Associates v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); See, Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987). Nevertheless, "'[t]hough pro se complaints are to be construed liberally, See, Estelle v. Gamble, 429 U.S. 97, 106 (1976), they still must allege sufficient facts to support the claims advanced.'" Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); See also, Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "pro se complaint must contain specific facts supporting its conclusions."). Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III.    MOTION FOR SUMMARY JUDGMENT. [DOCKET NO. 24].

Defendants' Motion for Summary Judgment, [Docket No. 24], asks the Court to enter judgment in favor of Defendants on all declaratory judgment claims "because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law." (Defs.' Mem., [Docket No. 26], at 1).

The claims brought by Plaintiff against Defendants are a discrimination claim pursuant to the Privileges and Immunities Clause, a defamation claim, a breach of contract claim, a retaliation claim, and a conspiracy claim. (See, Amended Compl. [Docket No. 18]).

### A.  Personal Capacity

Plaintiff explicitly states that "[a]ll defendant's [sic] are being sued in their personal capacities." (Plf.'s Amended Compl., [Docket No. 18], at 2).

"It is long established that a [ ] litigant wishing to sue a government agent in his individual, as well as official, capacity must 'expressly and unambiguously state so in the pleadings.'" Lundak v. Nyseth, 2005 WL 2216313 at *2 (D. Minn. 2005). Additionally, although pro se complaints, "however inartfully pleaded," are to be held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "a district court should not assume the role of advocate for the pro se litigant," nor may a district court "rewrite a [complaint] to include claims that were never presented." Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (quotations omitted) (cited with approval in Palmer v. Clarke, 408 F.3d 423, 444 n. 15 (8th Cir. 2005)). In the present case, Plaintiff explicitly stated that he is suing Defendants only in their personal capacities.

Because Plaintiff specifically stated in his Amended Complaint that he was suing Defendants only in their individual, personal capacities, the Court must take the statement on its face and will discuss Plaintiff's Amended Complaint only in that context.

### B.  Discrimination Pursuant To The Privileges And Immunities Clause

Plaintiff claims that Defendants discriminated against him by violating his federal rights under the Privileges and Immunities Clause (Plf.'s Amended Compl., [Docket No. 18], at 2). Defendants conversely argue that Plaintiff's discrimination claim based on the Privileges and Immunities Clause must fail as a matter of law because Plaintiff has not even alleged any state action. (Defs.' Mem., [Docket No. 26], at 8).

Plaintiff bases his Privileges and Immunities Clause claim on his allegation that a telephone call between himself and Defendant Eide occurred in June 2014, (Plf.'s Amended Compl., [Docket No. 18], at 3), during which, Defendant Eide told him that "if it were up to me, you would not have any of these [timber] sales, because the sales that you have could be cut by one of our loggers up here. Isn't there any wood in Wisconsin to cut[?]" (Id.). Defendant Eide has denied the call took place, and beyond the mere allegation in his Amended Complaint, Plaintiff has presented no admissible evidence showing that the call took place.

The Privileges and Immunities Clause of the Constitution of the United States provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "Whether differential treatment of out-of-state residents violates this Clause involves a two-part inquiry: (1) whether the state's law discriminates against out-of-state residents with regard to a privilege or immunity protected by the Clause, and (2) if so, whether sufficient justification exists for the discrimination." Minnesota ex rel. Hatch v. Hoeven, 456 F.3d 826, 834 (8th Cir. 2006).

It is undisputed that at the time Plaintiff bought timber from Lake County in Minnesota that Plaintiff was a resident of the state of Wisconsin.

"It is commonly understood that the protections afforded to an individual by the Privileges and Immunities Clause applies only where a State has taken action." See, Toomer v. Witsell, 334 U.S. 385, 396 (1948) (deciding whether a state statute violated the Privileges and Immunities Clause) (emphasis added); See also, Baldwin v. Fish and Game Comm. of Montana, 436 U.S. 371, 405 (1978) (finding that a state licensing scheme did not violate the Privilege and Immunities Clause).

In the present case, Plaintiff has sued Defendants solely in their individual, personal capacities, as opposed to their official capacities as employees of Lake County. Plaintiff explicitly states that "[a]ll defendant's [sic] are being sued in their personal capacities." (Plf.'s Amended Compl., [Docket No. 18], at 2). Because Plaintiff has not sued Lake County and only sued Defendants in their individual, personal capacities, the Privileges and Immunities clause does not apply. Accordingly, Plaintiff's claim under the Privileges and Immunities Clause must necessarily fail. See, North Dakota v. Swanson, 2012 WL 4479246, *15 (D. Minn. 2012) ("If a law does not discriminate based on residence, no claim can be sustained under the Privileges and Immunities Clause.") (emphasis added). Plaintiff has not even alleged any state law or action by officials acting under color of state law in their official capacity which discriminated against him on the basis of his Wisconsin residency; in constrast, Plaintiff only alleges that he was discriminated against by Defendants acting in their individual, personal capacities.

Therefore, to the extent Defendants' Motion for Summary Judgment, [Docket No. 24], seeks judgment in their favor on Plaintiff's Privileges and Immunities claim, the undersigned recommends the Motion be granted.

### C. Breach of Contract

Plaintiff next claims that Defendant Eide and Defendant Nixon breached a contract with him. (Plf.'s Amended Compl., [Docket No. 18], at 2). Defendants contend that this claim fails because none of the Defendants personally entered into any contract with Plaintiff, and even if there was a contract, it was between Plaintiff and Lake County, who is not a defendant in the present case.

As an initial matter, Plaintiff does not identify the specific contract he alleges Defendants breached. Rather, Plaintiff asserts that "Lake County sold me those timber sales," took his down

payment and "put up roadblocks so [he] couldn't get access to the timber." (Plf.'s Mem., [Docket No. 33], at 5). Based on those assertions, Plaintiff contends that "defendants are liable for breach of contract." (Plf.'s Mem., [Docket No. 33], at 5). Given the pro se liberal construction of pleadings afforded Plaintiff, the "contract" which could be at issue is the permit for Timber Sale 12-06TA, issued on June 14, 2012, which is between Plaintiff and Lake County.

In order to assert a breach of contract claim, a plaintiff must establish "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Lyon Fin. Servs. Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014) (quoting Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011)). However, "it is the general rule that contract provisions do not create duties to strangers to the contract." Rausch v. Julius B. Nelson & Sons, Inc., 149 N.W.2d 1, 7 (Minn. 1967). If a claimant fails to establish any of these necessary elements, then his breach of contract claim fails. See, Celotex Corp., 477 U.S. at 322. Thus, breach of contract claims asserted against nonparties to the contract fail. See, Commercial Assoc., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 783 (Minn. Ct. App. 2006) (holding that a party cannot be liable under a breach of contract claim when it was not a party to the contract at issue); O'Brien Entm't Agency, Inc. v. Wolfgramm, 407 N.W.2d 463, 466 (Minn. Ct. App. 1987) (finding a contract unenforceable against certain individuals "because none of [those individuals] signed the . . . agreement and it therefore does not comport with the statute of frauds").

However, as previously observed, Plaintiff has sued Defendants in only their individual, personal capacity. In the present case, the record, shows that Plaintiff purchased timber permits from the political subdivision Lake County; not the individual Defendants. Even liberally construing Plaintiff's Amended Complaint in his favor to assert that the timber permits are the

contracts Plaintiff is alleging were breached, the record shows that the permits issued to Plaintiff were issued by Lake County. (See, Ex. A, [Docket No. 27], at 1, 2, 5, 12, 18, 20, 26, 33, 39, 45, 50, 55, 62). Similarly, the restrictions overseeing Plaintiff's logging activities were dictated in the "Lake County Cutting Regulations Attachment To Sale Contract," which were attached to the permits issued by Lake County. (See, Ex. A, [Docket No. 27], at 32, 34, 44, 46, 51, 56, 63). The permits, and the regulations governing the permits, shows that Plaintiff "contracted" with Lake County and not any of the Defendants in their individual, personal capacities. Additionally, according to the state statute governing timber sales, any contracts entered into for timber sales are between the purchaser and the county they were purchased from. See, Minn. Stat. § 282.04.

As previously discussed, breach of contract claims asserted against nonparties to the contract fail. Commercial Assoc., Inc., 712 N.W.2d at 783. Plaintiff entered into the alleged timber sales contracts with Lake County and not with any of the Defendants in their personal capacities. Courts have found that granting a defendant summary judgment in similar situations is appropriate. For example, in Aberman v. Malden Mills Industries, Inc., 414 N.W.2d 769 (Minn. Ct. App. 1987), the court found that summary judgment was appropriate where an officer was sued for breach of contract in his individual capacity because appellants failed to show that the officer acted in a manner other than in his official corporate capacity. See, also in e.g., Minn. Stat. § 282.04, subd. 1(a) ("The county auditor, with terms and conditions set by the county board, may sell timber upon any tract that may be approved by the natural resources commissioner.").

Similar to Aberman, in the present case Plaintiff sued Defendants for breach of contract in their individual, personal capacities. Even assuming that Plaintiff interacted through Defendants when contracting with Lake County, because there is no evidence in the record that Defendants

acted other than in their official capacities in issuing the timber permits, Plaintiff's breach of contract claim must fail because Defendants are not themselves personally parties to the contract.

Thus, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has failed "to establish the existence of an element essential to that party's case, and on which [the Plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Therefore, to the extent Defendants' Motion for Summary Judgment, [Docket No. 24], seeks summary judgment in their favor on Plaintiff's breach of contract claim, the undersigned recommends the Motion be granted.

### D. Retaliation

Plaintiff also sues Defendant Eide and Defendant Nixon for retaliation for refusing to allow him "to bid on Lake County timber sales, because [he] threatened to file this [present] lawsuit." (Amended Compl., [Docket No 18], at 2).

Generally, to demonstrate a First Amendment violation in a retaliation context, a party must show that it was not awarded a contract in retaliation for petitioning on a matter of public concern. See, Heritage Constructors, Inc. v. City of Greenwood, Ark., 545 F.3d 599, 602 (8th Cir. 2008) (citing Bd. Of County Comm'rs v. Umbehr, 518 U.S. 668, 673 (1996)). Speech is a matter of "public concern" if it relates to a political, social, or other community issue. Connick v. Myers, 461 U.S. 138, 146 (1983); See, Campbell v. Arkansas Dept. of Correction, 155 F.3d 950 (8th Cir. 1998) (prison warden speaking out about corruption and lack of security in prison touched upon matters of public concern).

The Court finds Heritage Constructors, Inc., supra, particularly instructive in the present case. In Heritage, the plaintiff sued the defendant, a city, for retaliation alleging that the defendant

16

had denied the plaintiff a contract in retaliation for the plaintiff exercising its right to petition when it initiated arbitration on an earlier contract with the city. Heritage, 545 F.3d at 601. The district court found that "the arbitration was a private financial interest of [the defendant] and not a matter of public concern." Id. Because the arbitration was not a matter of public concern, the district court granted the defendant summary judgment. Id. The Eighth Circuit affirmed, holding that "[b]ecause [the plaintiff] does not allege that its arbitration was a matter of public concern, the district court properly granted summary judgment to the [defendant]." Id. at 603.

In the present case, Plaintiff has failed to make any showing that his filing of the present lawsuit arose out of a matter of public concern. Like in Heritage, Plaintiff has not claimed or alleged any facts that his lawsuit involves a matter of public concern. There is no evidence in the record demonstrating that Plaintiff filed this lawsuit as it relates to any political, social, or other community issue. Therefore, this lawsuit does not involve a matter of public concern.

Notably this case arises out of Plaintiff's purely private, commercial logging concerns and interests. Moreover, Plaintiff also does not dispute the context surrounding Defendants' alleged retaliatory actions when it cancelled timber permit 12-13TA and restricted his access to timber permit 12-06TA. Specifically, Plaintiff wrote multiple delinquent checks to pay for the timber permits that were returned for insufficient funds, and auditors found that Plaintiff failed to comply with the performance regulations imposed on earlier timber sale permits. (See, Ex. C [Docket No. 27]). Importantly, Lake County did not permanently bar Plaintiff from purchasing logging within its boundaries, but it only imposed several obligations on Plaintiff that he was required to comply with as remedial conditions in order for the County to continue doing logging business with him. (Id.).

17

Therefore, to the extent Defendants' Motion for Summary Judgment, [Docket No. 24], seeks summary judgment in their favor on Plaintiff's retaliation claim, the undersigned recommends the Motion be granted.[3]

### E. Defamation

In his Amended Complaint, Plaintiff also makes a state law claim that Defendants defamed him by "making false comments that he is a bad logger and doesn't follow the forester's direction." (Plf.'s Amended Compl., [Docket No. 18], at 2). Plaintiff's defamation claim stems from a February 10, 2016, letter sent by Defendants to Plaintiff. Defendants dispute this claim, arguing that Plaintiff cannot establish a prima facie defamation claim, and that Plaintiff's claim is barred by the doctrine of qualified privilege. (Defs.' Mem., [Docket No. 26], at 16).

In his Memorandum in Opposition to the Motion for Summary Judgment, Plaintiff does not even address Defendants' arguments in favor of granting them summary judgment on Plaintiff's defamation claim. [Docket No. 33]. Plaintiff also failed to address in any way his defamation claim during oral argument at the August 29, 2018, Motions Hearing.

---

[3] Plaintiff claims that he was taken off the responsible bidders list because he threatened litigation. To support his claim, Plaintiff relies on an email from Defendant Eide to Defendant Hondl, where Defendant Eide proposed additions to a letter being sent to Plaintiff. (Plf.'s Ex. 6 [Docket No. 35]). Among the proposed additions to the letter were additional reasons for removing Plaintiff from the responsible bidders list. (Id.). The email was merely a communication between two employees preliminarily discussing potential reasons for removing Plaintiff from the responsible bidders list. Plaintiff's contention that his threatening litigation was the reason that Lake County removed him from the list, however, is only speculation because the email was a preliminary discussion as opposed to the final list of reasons for removing Plaintiff from the responsible bidders list. Furthermore, even if Plaintiff's threatening litigation was a reason for Lake County removing him from the responsible bidders list, Plaintiff would still be unsuccessful on his retaliation claim. Importantly, "[t]he defendant's retaliatory motive must be a but-for cause of the retaliation; a plaintiff cannot recover if the defendant would have taken the same action even in the absence of any improper motive." Binion v. City of St. Paul, 788 F. Supp. 2d 935, 946 (D. Minn. 2011) (citing Osborne v. Grussing, 477 F.3d 1002, 1006 (8th Cir. 2007)). Given that the email Plaintiff relies on to support his retaliation claim cites more than just "threatening litigation" as a reason to remove Plaintiff from the responsible bidders list, even, solely for the sake of argument, construing Plaintiff's threatening litigation as a retaliatory motive, Plaintiff's claim would still fail because Plaintiff has not provided any admissible evidence from which a fact finder might conclude that the same action would not have been taken absent Defendant Eide's alleged retaliatory motive.

Even when a party is pro se, courts will find that a plaintiff waived his claim(s) when he did not respond to arguments in the defendant's pleadings. See, Martens v. Sjostrom, No. 13-cv-2297 (JRT/JSM), 2014 WL 1356139 (D. Minn. Apr. 7, 2014) (finding that a pro se plaintiff's claims were waived for failing to address arguments raised in the defendant's motion to dismiss); See also, Koscielski v. City of Minneapolis, 393 F. Supp. 2d 811, 818, n.5 (D. Minn. 2005) (finding that the plaintiffs waived their claims for declaratory relief after not responding to the defendant's motion for summary judgment); Hewitt v. City of Minneapolis, 2013 WL 718189, at *5, n. 6 (D. Minn. 2013) (failure to respond to motion results in waiver of arguments); Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999) (failure to respond to defendant's arguments results in waiver).

In the present case, Plaintiff has not briefed nor otherwise responded in any way to Defendants' arguments in favor of granting Defendants summary judgment on Plaintiff's defamation claim. Additionally, during the August 29, 2018, Motions Hearing, Plaintiff did not refute Defendants' counsel's statement that Plaintiff did not brief or otherwise respond to Defendants' arguments in favor of granting Defendants summary judgment on Plaintiff's defamation claim. (Motions Hearing, August 29, 2018, 1:47 p.m.–1:49 p.m.).

Plaintiff failed to proffer any argument in support of his defamation claim, and the Court may not here construct that argument for Plaintiff. See, Burgs, 745 F.2d at 528 (8th Cir. 1984); Stone, 364 F.3d at 914. Because Plaintiff did not respond or otherwise address Defendants' arguments in favor of granting Defendants summary judgment on Plaintiff's defamation claim, Plaintiff has waived that claim.

Therefore, to the extent Defendants' Motion for Summary Judgment, [Docket No. 24], seeks summary judgment in their favor on Plaintiff's state law defamation claim, the undersigned recommends the Motion be granted.[4]

---

[4] Even if Plaintiff had not waived his defamation claim, that claim would still necessarily fail. Under Minnesota law, defamation requires proof that the alleged defamatory statement (1) was communicated to someone other than the plaintiff, (2) was false, and (3) tended to harm the plaintiff's reputation and lower it in the estimation of the community. Chambers v. Travelers Companies, Inc., 668 F.3d 559, 564 (8th Cir. 2012) (citing Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919–20 (Minn. 2009)). According to Plaintiff, he believes that the allegedly defamatory statements were made in the letter which was distributed to members of the Lake County Prosecutor's office and the Lake County Auditor's office, as well as, Defendant Hondl, an Administrative Assistant with Lake County Forestry/Land Department, and Tom Bodell, a Forester with Lake County Forestry/Land Department. (Plf.'s Amended Compl., [Docket No. 18], at 2). The letter itself is signed by Defendant Eide and Defendant Nixon, and with copies sent to Defendant Auron and Mr. Huddleston; all four of which are employees of Lake County. (Id.). Plaintiff also alleges that Defendant Hondl and Tom Bodell saw the alleged defamatory statements; both employees of Lake County. There is, however, no evidence in the record indicating that it was seen by anyone besides those who signed it and those who were provided copies of it. In other words, there is no admissible evidence in the record that the allegedly defamatory statements were seen by anyone other than Lake County employees and not to anyone in the community at large. Such distribution does not constitute publication required for his defamation claim. See, generally, Lewis v. Equitable Life Assur. Soc'y of the U.S., 389 N.W.2d 876, 890 (Minn. 1986). Moreover, even if Plaintiff could show publication, his defamation claim still fails because he argues that the letter opines that he is a "bad logger." It is well-recognized in Minnesota, however, that the First Amendment absolutely protects opinion that lacks "a provably false statement of fact." McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000) (citing Hunter v. Hartman, 545 N.W.2d 699, 706 (Minn. Ct. App. 1996). The letter's alleged description of Plaintiff as a "bad logger" is not sufficiently precise or verifiable to support a claim of defamation. See, e.g., Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995) (statements that plaintiff had "poisoned the board," was "a bad influence," was "emotional" and "not a team player," could not be interpreted as stating facts). Therefore, even construing the letter as communicating that Plaintiff is a "bad logger," because the statement is not sufficiently precise or verifiable, the statement is not a "provably false statement of fact," and, therefore Plaintiff's defamation claim must necessarily fail. See, McClure, 223 F.3d at 853. Even if Plaintiff presents sufficient evidence of the three required elements, Defendants are nonetheless entitled to a qualified privilege that defeats the defamation claim because the statement was "made upon a proper occasion, from a proper motive, and [ ] based upon reasonable or probable cause." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 256–57 (Minn. 1980). Specifically, a qualified privilege exists where statements made between employees and employers "in good faith and for a legitimate purpose" have been considered to fall within this privilege. Id. There is no admissible evidence in the present record that Defendants lacked a good faith basis to believe the opinion proffered in the letter was communicated only to Plaintiff and Lake County employees in an effort to rectify logging contract performance concerns. Therefore, the letter is subject to a qualified privilege because the statement was made "in good faith and for a legitimate purpose." See, Krutchen v. Zayo Bandwidth Northeast, LLC, 591 F. Supp. 2d 1002, 1020 (D. Minn. 2008). This qualified privilege shifts the burden to Plaintiff to show that Defendants made the statement with actual malice. Lewis, 389 N.W.2d at 890. Malice is defined as "actual ill will, or a design causelessly and wantonly to injure plaintiff." McBride v. Sears, Roebuck & Co., 235 N.W.2d 371, 375 (Minn. 1975). Plaintiff has not provided any evidence showing that Defendants' acted with malice. Thus, although malice is generally an issue for the jury, a court can grant summary judgment on the issue of malice if there is insufficient evidence to raise a genuine question of fact. Sherman v. Rinchem Co., Inc., 2011 WL 3471057 *10 (D. Minn. 2011) (citing Bol v. Cole, 561 N.W.2d 143 (Minn. 1997)); See also, Frankson v. Design Space Intern., 394 N.W.2d 140, 144–45 (Minn. 1986) (overturning a jury's verdict because there was insufficient evidence of malice). Accordingly, even if Plaintiff had not waived his defamation claim, the undersigned would still recommend granting summary judgment in Defendants' favor on Plaintiff's defamation claim.

### F. Conspiracy

Finally, Plaintiff claimed that Defendants conspired against him with the Minnesota Department of Agriculture (hereinafter "MDA"). Plaintiff specifically alleges that "the conspiracy . . . was the fact that the defendant scrutinized [his] every move, made it difficult to operate [his] logging business." (Amended Compl., [Docket No 18], at 3). Plaintiff did not provide any evidence to support his conspiracy claim. Furthermore, the emails Plaintiff references in his Amended Complaint, between Defendants and MDA, do not show that the two were conspiring together to conduct any illegal or tortious act.

In the present case, Plaintiff did not brief or otherwise respond to Defendants' arguments in favor of granting Defendants summary judgment in their favor on Plaintiff's conspiracy claim. Additionally, during the August 29, 2018, Motions Hearing, Plaintiff did not refute Defendants' counsel's statement that Plaintiff did not brief or otherwise respond to Defendants' arguments in favor of granting Defendants summary judgment on Plaintiff's conspiracy claim. (Motions Hearing, August 29, 2018, 1:47 p.m.–1:49 p.m.). Similarly, Plaintiff also did not offer any oral argument at the Motions Hearing regarding his conspiracy claim.

As previously discussed, even when a party is pro se, courts will find that a plaintiff waived his claim(s) when he did not respond to arguments in the defendant's pleadings. See, Martens v. Sjostrom, No. 13-cv-2297 (JRT/JSM), 2014 WL 1356139 (D. Minn. Apr. 7, 2014) (finding that a pro se plaintiff's claims were waived for failing to address arguments raised in the defendant's motion to dismiss); Koscielski v. City of Minneapolis, 393 F. Supp. 2d 811, 818, n.5 (D. Minn. 2005) (finding that the plaintiffs waived their claims for declaratory relief after not responding to the defendant's motion for summary judgment); Hewitt v. City of Minneapolis, 2013 WL 718189, at *5, n. 6 (D. Minn. 2013) (failure to respond to motion results in waiver of arguments); See also,

Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999) (failure to respond to defendant's arguments results in waiver).

Plaintiff failed to proffer any evidence or argument whatsoever in support of his conspiracy claim, and the Court may not here construct that argument for him. See, Burgs, 745 F.2d at 528; Stone, 364 F.3d at 914. In the present case, because Plaintiff did not respond or otherwise address in any way Defendants' arguments in favor of granting Defendants summary judgment on Plaintiff's conspiracy claim, Plaintiff has waived that claim.

Therefore, to the extent Defendants' Motion for Summary Judgment, [Docket No. 24], seeks summary judgment in their favor on Plaintiff's conspiracy claim, the undersigned recommends the Motion be granted.[5]

---

[5] Moreover, even if Plaintiff had not waived his conspiracy claim, the undersigned would still recommend that Defendants are entitled to summary judgment in their favor on Plaintiff's conspiracy claim. "The gist of a private action for the wrongful act of many is not the combination or conspiracy, but the damage done or threatened to the plaintiff by the acts of the defendants." Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950). To be actionable, a civil conspiracy must be based upon an underlying tort. D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. App. 1997) (citing Harding, 41 N.W.2d at 824). Because, in a civil conspiracy action, liability is "predicated upon the tort committed by the conspirators and not upon the conspiracy, allegations of conspiracy do not change the nature of the cause of action." Harding, 41 N.W.2d at 825. "Accurately speaking, there is no such thing as a civil action for conspiracy." Id. Plaintiff does not allege an underlying tort against Defendants to which a claim of conspiracy can attach. Accordingly, Plaintiff's conspiracy claim necessarily fails. Furthermore, even if Plaintiff accurately alleged an underlying tort against Defendants to which a claim of conspiracy could attach, the evidence in the record does not show that Defendants and the MDA were working together to harm Plaintiff. Rather, the evidence in the record shows that MDA contacted Lake County on multiple occasions to inquire about Plaintiff's compliance with Minnesota's Gypsy Moth Quarantine. (See, Ex. G [Docket No. 26]). Additionally, the record shows that Defendants properly responded to MDA's inquiries. (Id.). Nothing in the record indicates that Defendants were conspiring with MDA against Plaintiff. Thus, because there is not a civil action for conspiracy, and because nothing in the records shows that Defendants were conspiring with MDA to harm Plaintiff, even if Plaintiff had not waived his conspiracy claim, his claim of conspiracy would fail and Defendants would be entitled to summary judgment on Plaintiff's conspiracy claim.

## IV.     CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant Nathan Eide, Defendant William Nixon, Defendant Laura Auron, Defendant Russell Conrow, and Defendant Hondl's Motion for Summary Judgment, [Docket No. 24], be **GRANTED**, as set forth above; and

2. The present action be **dismissed with prejudice**.


Dated: October 25, 2018                              s/Leo I. Brisbois
                                                     The Honorable Leo I. Brisbois
                                                     United States Magistrate Judge


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).